LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
P.O. Box 488
Ukiah, CA 95482
Telephone: 707/462-6846
Facsimile: 707/462-4235
E-mail: marston1@pacbell.net

Attorneys for Defendants

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| BRUCE ALAN INGRASSIA, AND MILLIMAC ENTERPRISES, | Case No. 1:09-CV-01266-AWI-SMS |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| v. | **[Fed. R. Civ. Proc. 12(b)(1), 12(b)(6)]** |
| CHICKEN RANCH BINGO AND CASINO, and CHICKEN RANCH RANCHERIA, | Date: October 19, 2009<br>Time: 1:30 p.m.<br>Courtroom: 2 |
| Defendants. | |

## INTRODUCTION

Plaintiffs, Bruce Alan Ingrassia, and Millimac Enterprises ("Ingrassia") filed suit in the Superior Court of the State of California, County of Tuolumne against Defendants Chicken Ranch Bingo and Casino ("Casino") and the Chicken Ranch Rancheria ("Tribe") (together, "Tribal Defendants") asserting claims of copyright infringement and related common counts. Because Ingrassia's second cause of action is based on the Copyright Act, 17 U.S.C. 101 *et seq.*, and, therefore, arises under the laws of the United States within the meaning of 28 U.S.C. § 1331, the Tribe removed the case to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446. The Tribal Defendants now move the Court for an order dismissing Ingrassia's complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of jurisdiction over the subject matter,

or, in the alternative, for an order dismissing Ingrassia's second cause of action, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted on the grounds that, as a quasi-sovereign Indian tribe, the Tribe enjoys sovereign immunity from suit and cannot be sued without its consent. Since the Tribe has never given its consent to the Plaintiffs to sue the Tribe in this case, the complaint must be dismissed.

## I.

## THE CHICKEN RANCH RANCHERIA ENJOYS SOVEREIGN IMMUNITY FROM SUIT ABSENT ITS CONSENT.

Ingrassia alleges, without citation to any authority, that sovereign immunity does not bar his claims against the Tribe:

> Sovereign immunity generally does not shield Indian tribes, tribal entities, or tribe members from the compliance with federal, state, and local laws with regard to trade and other affairs in dealing with non-tribal persons or with matters extending outside the immediate confines of the Indian reservation.
> With regard to these commercial matters, the Defendants, CHICKEN RANCH BINGO AND CASINO and CHICKEN RANCH RANCHERIA, enjoy no immunity from the Copyright Act, 17 U.S.C. 101, et seq., or other pertinent provisions of applicable law.

Complaint, pp. 8-9, ¶¶ 19-20.

There is absolutely no basis for these legal conclusions.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). The sovereign immunity of an Indian tribe is coextensive with that of the United States itself. *Chemehuevi Indian Tribe v. California State Board of Equalization*, 757 F.2d 1047, 1050 (9th Cir. 1985), rev'd on other grounds 474 U.S. 9 (1985); *Kennerly v. United States*, 721 F.2d 1252, 1258 (9th Cir. 1983).

Judicial recognition of a tribe's immunity from suit is not discretionary with a court. Absent an effective waiver, the assertion of sovereign immunity by a federally recognized Indian tribe deprives the court of jurisdiction to adjudicate the claim:

> Sovereign immunity involves a right which courts have no choice, in the absence of a waiver, but to recognize. It is not a remedy, as suggested by California's argument, the application of which is within the discretion of the court. . . . Consent alone gives jurisdiction to adjudge against the sovereign. Absent that

> consent, the attempted exercise of judicial power is void. . . . Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body.

*People of the State of California v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979). See *United States v. United States Fidelity and Guarantee Co.*, 309 U.S. 506, 512-513 (1940).

Tribal sovereign immunity extends to tribal activities that occur both on-reservation and off-reservation, and to the economic as well as the governmental activities of the Tribe:

> To date, our cases have sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred. . . . Nor have we yet drawn a distinction between governmental and commercial activities of a tribe. . . . Though respondent asks us to confine immunity from suit to transactions on reservations and to governmental activities, our precedents have not drawn these distinctions.

*Kiowa Tribe of Oklahoma v. Manufacturing Technologies*, 523 U.S. 751, 754-55 (1998) (citations omitted).

Furthermore, tribal sovereign immunity applies "irrespective of the merits" of the claim asserted against the tribe. *Rehner v. Rice*, 678 F.2d 1340, 1351 (9th Cir. 1982), rev'd on other grounds, 463 U.S. 713 (1983).

Tribal sovereign immunity can be abrogated by Congress or waived by a tribe, but such an abrogation or waiver "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. at 58; *C & L Enters. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001).

The doctrine of Tribal sovereign immunity applies to claims brought against entities established by a tribe that "function as an arm of the tribe." *Marceau v. Blackfeet Hous. Authority*, 455 F.3d 974, 978 (9th Cir. 2006). The United States Court of Appeals for the Ninth Circuit has unequivocally ruled that tribal casinos operated pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA") are protected by tribal sovereign immunity.

> [T]his is no ordinary business. The Casino's creation was dependent upon government approval at numerous levels, in order for it to conduct gaming activities permitted only under the auspices of the Tribe. The Indian Gaming Regulatory Act ("IGRA"), *25 U.S.C. § 2710(d)(1)*, required the Tribe to authorize the Casino through a tribal ordinance and an interstate gaming

> compact. The Tribe and California entered into such a compact "on a government-to-government basis."
>
> These extraordinary steps were necessary because the Casino is not a mere revenue-producing tribal business (although it is certainly that). The IGRA provides for the creation and operation of Indian casinos to promote "tribal economic development, self-sufficiency, and strong tribal governments." *25 U.S.C. § 2702(1)*. One of the principal purposes of the IGRA is "to insure that the Indian tribe is the primary beneficiary of the gaming operation." *Id.*, *§ 2702(2)*. The compact that created the Gold Country Casino provides that the Casino will "enable the Tribe to develop self-sufficiency, promote tribal economic development, and generate jobs and revenues to support the Tribe's government and governmental services and programs."
>
> With the Tribe owning and operating the Casino, there is no question that these economic and other advantages inure to the benefit of the Tribe. Immunity of the Casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general. *Cf. Alden v. Maine, 527 U.S. 706, 750, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999)* (noting that sovereign immunity protects the financial integrity of States, many of which "could have been forced into insolvency but for their immunity from private suits for money damages"). In light of the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations, there can be little doubt that the Casino functions as an arm of the Tribe. It accordingly enjoys the Tribe's immunity from suit.

*Allen v. Gold Country Casino*, 464 F. 3d 1044, 1046-1047 (9th Cir. 2006). Accord, *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725-726 (9th Cir. 2008).

The Chicken Ranch Rancheria is a federally recognized Indian tribe. 72 FR 13648 (March 22, 2007). As such, it enjoys sovereign immunity from unconsented suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. at 58; *Kiowa Tribe of Oklahoma v. Manufacturing Technologies*, 523 U.S. 754-755. The Tribe conducts gaming pursuant to a Tribal-State class III gaming compact with the State of California and the requirements of the IGRA under the fictitious business name "Chicken Ranch Bingo and Casino." Declaration of Dorothy Janet Costa, p. 2, ¶ 4.[1] Thus, the Casino, too, enjoys the protection of the Tribe's sovereign immunity.

---

[1] While it is not clear that Ingrassia's allegation that "Defendant Chicken Ranch Bingo and Casino was and is a business entity or association, the form of which is unknown at this time," Complaint, p.4, ¶ 2, can be construed to be an allegation that the Casino is not the Tribe dba Chicken Ranch Casino and Bingo, to the extent that there is any factual dispute as to whether the Casino is a tribal enterprise protected by the Tribe's sovereign immunity, the Court is permitted to consider "evidence presented with respect to the jurisdictional issue and rule on that issue" in ruling on a Rule 12(b)(1) motion. *Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

The present lawsuit therefore, must be dismissed unless Ingrassia can demonstrate that the Tribe's sovereign immunity has been abrogated by Congress or waived by the Tribe.

In his complaint, Ingrassia sets forth two claims. The first is for common counts: open book account for money had and received by Chicken Ranch for the benefit of Ingrassia, for work, labor, services and materials rendered by Ingrassia for which Chicken Ranch agreed to pay Ingrassia the reasonable value, and for marketing and sale of products allegedly bearing Ingrassia's copyright-protected graphic art, logos and designs. The second is for copyright infringement based on the sale of products allegedly bearing Ingrassia's copyright protected graphic art, logos and designs, pursuant to the Copyright Act.

Ingrassia's first cause of action is a common law action of general *assumpsit*, *Philpott v. Superior Court*, 1 Cal. 2d 512, 518-526 (1934). Congress has never abrogated tribal sovereign immunity for causes of action based on common counts.

While the second cause of action is founded on a federal statute, the Copyright Act does not abrogate tribal sovereign immunity:

> Applying *Santa Clara Pueblo* and *Kiowa Tribe* to this dispute convinces us that the Tribe is immune from suit on [plaintiff's] copyright claims. Nothing on the face of the Copyright Act "purports to subject tribes to the jurisdiction of the federal courts in civil actions" brought by private parties, *Santa Clara Pueblo, 436 U.S. at 59*, and a congressional abrogation of tribal immunity cannot be implied, . . .

*Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2nd Cir. 2000). See *Florida Paraplegic Association, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126 (11th Cir. 1999).

There is also no basis for concluding that the Tribe waived its sovereign immunity with regard to either of Ingrassia's causes of action. While he has alleged that sovereign immunity does not bar his claims, Ingrassia does not specifically allege that the Tribe has waived its immunity with regard to any of his claims. Nor could he. The Tribe has not waived its immunity. Declaration of Dorothy Janet Costa, p. 2, ¶ 5.[2]

---

[2] It is not clear that Ingrassia's broad allegations, Complaint, p. 8-9, ¶¶ 19-20, that the Tribe's sovereign immunity does not bar his claim can be construed to be allegations that the Tribe

In the absence of a Congressional abrogation of tribal sovereign immunity or an express waiver by the Tribe, the Tribe's sovereign immunity bars Ingrassia's claims. Ingrassia's complaint must be dismissed

## II.

**THE COPYRIGHT ACT DOES NOT APPLY TO INDIAN TRIBES, SO INGRASSIA'S SECOND CAUSE OF ACTION FAILS TO STATE A CAUSE OF ACTION**.

Ingrassia's second cause of action must also be dismissed pursuant to Fed R. Civ. Proc. 12(b)(6) for failure to state a claim up which relief can be granted, because the Copyright Act ("Act") does not apply to Indian tribes.

The terms "Indian," "tribe," and "Indian tribe" are not used anywhere in the Copyright Act, so there is no specific language in the Act that makes it applicable to Indians and Indian tribes. Nevertheless, as a general rule, "a general statute in terms applying to all persons includes Indians and their property interests." *FPC v. Tuscarora Indian Nation*, 362 U.S. 99, 116 (1960). The question that must be answered, therefore, is whether it is such a statute of general application.

17 U.S.C. § 501(a), the provision of the Copyright Act that establishes the cause of action for infringement of copyright, states that "Anyone who violates any of the exclusive rights of the copyright owner as provided" in the Copyright Act "is an infringer of the copyright." Section 501(a) further states:

> As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

17 U.S.C. § 101, the Copyright Act's definition section, states: "'State' includes the District of Columbia and the Commonwealth of Puerto Rico, and any territories to which this

---

has waived its sovereign immunity as to his claims. To the extent that there is any factual dispute as to whether the Tribe did, in fact, waive its sovereign immunity, the Court is permitted to consider evidence relating to that jurisdictional issue in ruling on a Rule 12(b)(1) motion. *Thornhill Publishing Co., supra*.

title is made applicable by an Act of Congress." The definition makes no reference to Indian tribes.

Clearly, if Congress believed that "anyone" included states, and other sovereigns, it would not have found it necessary to include a provision specifically applying the Copyright Act to states. If, in the absence of the explicit inclusion of states in the term "anyone" the Copyright Act would not apply to states, it would not apply to any other sovereign, such as an Indian tribe or foreign nation, unless that sovereign was explicitly included under the provisions of the statute. Since Indian tribes were not explicitly included in the term "anyone," that omission is evidence that Congress did not intend that the Copyright Act be enforced against Indian tribes.

The structure of the Copyright Act contrasts sharply with the structure of other statutes that have been found to be statutes of general application that apply to Indian tribes. For example, in *Donovan v. Coeur d'Alene Tribal Farm*, 751 F. 2d 1113 (9th Cir. 1985), the Ninth Circuit concluded that the Occupational Safety and Health Act ("OSHA")applied to an Indian enterprise, based in large part to the statute's definition of "employer": "The Act's coverage is comprehensive and we believe that its definition of employer clearly includes the Coeur d'Alene Tribal Farm." *Id*., at 1115, fn 1. Revealingly, the structure of that definition is the inverse of the definition in Section 501(a). "The Farm is an 'organized group of persons . . . engaged in a business affecting commerce who has employees . . . .' *See 29 U.S.C. § 652 (1982)*. Congress expressly excluded only 'the United States or any State or political subdivision of a State' from the broad definition of 'employer' in the Act." *Id.*

Thus, OSHA was found to be a statute of general application that included Indian enterprises in part at least because it specifically excluded states, which would, without the exclusion, be included in the coverage of the statute. The Copyright Act, by contrast, was drafted to specifically include states, suggesting strongly that Congress did not believe that the states would otherwise be included. 17 U.S.C. § 501(a).

More generally, the court decisions that have found that statutes of general application

include Indian tribes are comprehensive regulatory statutes designed to impose federal standards on particular activities; see, e.g. *Donovan, supra*, (OSHA); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174 (2d Cir. 1996) (same); *Florida Paraplegic, Association, supra*, (Americans with Disabilities Act); *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 935 (7th Cir. 1989) (Employee Retirement Income Security Act); *Navajo Tribe v. National Labor Relations Board*, 288 F.2d 162 (D.C. Cir. 1961) (National Labor Relations Act); *FPC v. Tuscarora Indian Nation, supra*, (Federal Power Act); or impose federal taxes, see e.g., *Confederated Tribes of Warm Springs Reservation of Oregon v. Kurtz*, 691 F.2d 878 (9th Cir. 1982), cert. denied, 460 U.S. 1040, 103 S. Ct. 1433, 75 L. Ed. 2d 792 (1983). The Copyright Act, by contrast, involves no regulatory scheme, it merely creates standards for what is subject to copyright and creates a private cause of action to enforce private property interests in copyrighted products.

Moreover, the Oxford English Dictionary defines "anyone" as "any person or people." CONCISE OXFORD ENGLISH DICTIONARY 59 (11th Ed 2006). Merriam Webster's Dictionary defines "anyone" is "any person at all." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 56 (11th Ed. 2003). The Supreme Court has ruled that, "In common usage, the term 'person' does not include the sovereign [and] statutes employing the phrase are ordinarily construed to exclude it." *United States v. Cooper Corp.*, 312 U.S. 600, 604 (1941).

Thus, it would appear from the text of the Copyright Act that Congress did not intend to include Indian tribes and their enterprises within the coverage of the Act.

The Tribe has been unable to find any federal court case that concludes that the Copyright Act applies to Indian tribes. Although the Second Circuit in *Bassett* ruled that tribal sovereign immunity barred a claim against an Indian tribe based on the Copyright Act, the court did not directly address whether the Copyright Act applies to Indian tribes. It merely acknowledged that Bassett had made that argument. ("Bassett also maintains, citing our decision in *Reich v. Mashantucket Sand & Gravel, 95 F.3d 174 (2d Cir. 1996)*, that the Copyright Act is a federal statute of 'general application [and therefore] presumably applies to

Indian Tribes.'" *Id.*, at 357.)

In the face of clear evidence that Congress did not believe that 17 U.S.C. § 501 would not apply to states or other sovereigns without an express provision stating that it does apply, and in the absence of any provision of the Copyright Act that evidences an intention on the part of Congress to apply that statute to Indian tribes, the Court is compelled to conclude that the Copyright Act does not apply to Indian tribes.

## CONCLUSION

Because the Tribe and the Casino are immune from suit, and because the Tribe has never waived, and Congress has not abrogated, the Tribe's sovereign immunity from suit with respect to any of Ingrassia's claims, the Court has no choice but to dismiss all of those claims. The Copyright Act, furthermore, does not apply to Indian tribes and it cannot, therefore, provide a basis for any claim against the Tribe or the Casino.

The Tribe therefore respectfully requests that the Court dismiss Ingrassia's complaint in its entirety.

DATED: September 10, 2009.    Respectfully submitted,

RAPPORT AND MARSTON

By: /s/ Lester J. Marston
LESTER J. MARSTON
Attorneys for Defendants