UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE ALAN INGRASSIA AND MILLIMAC ENTERPRISES,<br><br>          Plaintiffs,<br><br>     v.<br><br>CHICKEN RANCH BINGO AND CASINO, AND CHICKEN RANCH RANCHERIA,<br><br>          Defendants. | CIV-F-09-1266 AWI SMS<br><br>ORDER RE: MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

## I. History[1]

In 1986, Plaintiffs Bruce Alan Ingrassia and Millimac Enterprises produced a number of original visual images among them, "MiWuk Indian Riding on a Chicken." Plaintiffs printed this image on hats, shirts, and other souvenirs. Defendants Chicken Ranch Rancheria Tribe and Chicken Ranch Bingo and Casino purchased these items for resale. Plaintiffs retained the copyright under the arrangement. It is unclear whether there was a written contract between Plaintiffs and Defendants. The business relationship lasted for a number of years and ended at an unspecified time. In 2007, Plaintiffs discovered that Defendants were selling items with the

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

1

image of "MiWuk Indian riding on a Chicken" produced without Plaintiffs' permission.

Plaintiff sued Defendants in the Superior Court of California, County of Tuolumne on June 9, 2009, alleging breach of contract, common counts, and copyright infringement. Defendants removed the case to federal court on July 20, 2009 under 28 U.S.C. §1441(b). Defendants then filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1) due to tribal sovereign immunity. Plaintiffs opposed the motion. The court requested additional briefing and evidence which the parties provided. The matter was taken under submission without oral argument.

## II. Legal Standards

"Sovereign immunity limits a federal court's subject matter jurisdiction over actions brought against a sovereign. Similarly, tribal immunity precludes subject matter jurisdiction in an action against an Indian tribe." Alvarado v. Table Mt. Rancheria, 509 F.3d 1008, 1015-16 (9th Cir. 2007). "Suits against Indian tribes are...barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991); Stock West Corp. v. Lujan, 982 F.2d 1389, 1398 (9th Cir. 1993). "There is a strong presumption against waiver of tribal sovereign immunity." Demontiney v. United States, 255 F.3d 801, 811 (9th Cir. 2001). Waiver of sovereign immunity by a tribe may not be implied and must be expressed unequivocally. Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir. 1996). Similarly, congressional abrogation of sovereign immunity may not be implied and must be "unequivocally expressed" in "explicit legislation." Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir. 2003). The plaintiff bears the burden of showing a waiver of tribal sovereign immunity. See Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 2007 U.S. Dist. LEXIS 67422, *7 (D. Colo. 2007); Dontigney v. Conn. BIAC, 2006 U.S. Dist. LEXIS 55625, *10 (D. Conn. 2006); Morgan v. Coushatta Tribe of Indians of La., 2001 U.S. Dist. LEXIS 25291, *7 (E.D. Tex. 2001).

Tribal sovereign immunity applies in both federal and state courts. Snow v. Quinault Indian Nation, 709 F.2d 1319, 1321 (9th Cir. 1983), citing Santa Clara Pueblo v. Martinez, 436

U.S. 49, 58 (1978).  "The immunity...extends to suits for declaratory and injunctive relief," and "is not defeated by an allegation that [the tribe] acted beyond its powers."  <u>Imperial Granite Co. v. Pala Band of Mission Indians</u>, 940 F.2d 1269, 1271 (9th Cir. 1991).  Tribal sovereign immunity is not dependent on a distinction between on-reservation and off-reservation conduct nor is it dependent upon a distinction between the governmental and commercial activities.  <u>Kiowa Tribe v. Manufacturing Techs.</u>, 523 U.S. 751, 754-55 (1998).  A tribe's sovereign immunity extends both to tribal governing bodies and to tribal agencies which act as an arm of the tribe. <u>Allen v. Gold Country Casino</u>, 464 F.3d 1044, 1046 (9th Cir. 2006).  Tribal sovereign immunity extends to tribal officials when acting in their official capacity and within the scope of their authority but not to individual tribe members generally. <u>United States v. Oregon</u>, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981).

### III. Discussion

**A. Tribal Sovereign Immunity**

Defendants claim tribal sovereign immunity.  Plaintiffs deny that either of the Defendants have immunity from suit.

Plaintiffs provide no reason for their position with regards to the Chicken Ranch Rancheria tribe.  "The Supreme Court has consistently treated tribal recognition decisions by Congress or the executive as entitled to a large degree of deference." <u>Artichoke Joe's Cal. Grand Casino v. Norton</u>, 278 F. Supp. 2d 1174, 1179 (E.D. Cal. 2003).  The Chicken Ranch Rancheria of Me-Wuk Indians of California are included on a list of federally acknowledged tribes promulgated by the Bureau of Indian Affairs, Department of the Interior. 72 Fed. Reg. 13648 (March 22, 2007).  "[T]he inclusion of a group of Indians on the Federal Register list of recognized tribes would ordinarily suffice to establish that the group is a sovereign power entitled to immunity from suit." <u>Cherokee Nation v. Babbitt</u>, 117 F.3d 1489, 1499 (D.C. Cir. 1997).

Plaintiffs assert that "no record has been presented to establish that the Casino operates as an arm of the Tribe" sufficient to warrant immunity. Doc. 13, Plaintiffs' Opposition, at 5:17-18, quotations and citations omitted.  Plaintiffs state "Chicken Ranch Bingo and Casino was and is a

business entity or association, the form of which is unknown at this time" and that Chicken Ranch Rancheria tribe owned a business entity that "conducted business activities open to the general public, including but not limited to gaming and retail sales of clothing and other paraphernalia, primarily based at the commercial facility commonly known as Chicken Ranch Bingo and Casino." Doc. 1, Ex. 4, Complaint at 4:10-22. Defendants provide the declaration of the Tribal Administrator, which states "The Tribe conducts gaming on its tribal trust lands under the fictitious business name 'Chicken Ranch Bingo and Casino' pursuant a Tribal-State class III gaming compact with the State of California and the requirements of the Indian Gaming Regulatory Act. The Tribe, dba, the Chicken Ranch Bingo and Casino is not a corporation under either tribal, state or federal law." Doc. 17, Amended Costa Declaration, at 2:4-9. Defendants have established their entitlement to tribal sovereign immunity.

**B. Abrogation and Waiver**

The burden is thus on Plaintiffs to show waiver of immunity from suit. Plaintiffs, explicitly or implicitly, make four arguments: the U.S. Congress abrogated immunity in the Copyright Act, the tribal-state compact waives immunity, the contract with Plaintiffs waives immunity, and removal to federal court waives immunity.

Plaintiffs state, "It may well be found that Congress indeed intended the Copyright Act, 17 U.S.C. 101, et seq., as amended, to apply to all persons, foreign and domestic, Indian and otherwise." Doc. 13, Plaintiffs' Opposition, at 6:11-14. As a general matter, "Congress may not abrogate state sovereign immunity pursuant to its Article I powers." Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627, 636 (1999). Federal copyright law is enacted pursuant to Article 1, Section 8, Clause 8 of the U.S. Constitution, commonly termed the copyright and patent clause. Plaintiffs provide no compelling argument that tribal immunity should not apply in copyright suits.

Plaintiffs state, "Defendants have waived their purported defense of 'sovereign immunity' specifically or implicitly, by accepting and agreeing to a tribal-state compact, as contemplated in accordance with the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §2701, et seq." Doc. 19,

Plaintiffs' Additional Memorandum, at 3:16-20.  Plaintiffs argument fails for a number of reasons.  Among them, "The IGRA waives tribal sovereign immunity in the narrow category of cases where compliance with the IGRA is at issue." Lewis v. Norton, 424 F.3d 959, 962 (9th Cir. 2005), citing Mescalero Apache Tribe v. New Mexico, 131 F.3d 1379, 1385 (10th Cir. 1997). IGRA "prescribes the conditions under which Indian tribes may engage in commercial gaming on their reservations." City of Roseville v. Norton, 348 F.3d 1020, 1022 (D.C. Cir. 2003).  This suit does not have to do with IGRA compliance so the waiver does not apply.

Plaintiffs argue that the original contract through which the artwork was produced constitutes waiver.  They do not provide the actual written documents, instead producing a declaration of Plaintiff Ingrassia in which he states,

> Defendant CHICKEN RANCH paid me cash back in 1986, said 'NO' to the work for hire, did not pay for any artwork, and received a computer receipt. Also on or about June 19, 1995, I delivered an invoice to SANDRA FELICE on behalf of CHICKEN RANCH. The invoice clearly states that the transaction was **not** a work for hire (with the check mark in the NO box). The tribe never paid me for the artwork, nor were they billed for the artwork or any of the setups. It was thus clearly understood and accepted by the CHICKEN RANCH Defendants, without any protestations of immunity, that a lawful copyright was asserted and invoked, and that ownership of the artwork and of the copyright was retained by me and my company.

Doc. 22, Ingrassia Declaration, at 2:19-3:2.  Even assuming Plaintiff Ingrassia has accurately described the contents of the contract, it is plain that there is no waiver.  Plaintiffs argue that since Defendants did not affirmatively raise immunity at the time of contract formation, immunity is lost.  That is an incorrect statement of law.  Tribal immunity applies unless Plaintiffs can show an affirmative waiver in the contract.  Plaintiffs have not provided any indication that an affirmative waiver exists within the contract.

The last issue raised is whether removal from state to federal court constitutes waiver of the immunity.  The case law is not unanimous on the matter.  In an older case from the District of Nevada, the court found that removal did constitute waiver: "In the instant case, Respondent Tribe filed a notice of removal joinder...We have found no Ninth Circuit case law directly on point regarding the question of whether a defendant Indian tribe's removal of a case to federal court constitutes a waiver of tribal sovereign immunity. However, Indian tribal sovereign immunity is closely analogous to a state's immunity from suit under the Eleventh Amendment."

State Eng'r v. S. Fork Band of the Te-Moak Tribe of W. Shoshone Indians, 66 F. Supp. 2d 1163, 1172-73 (D. Nev. 1999).  Though the case law concerning removal's effect on the Eleventh Amendment was mixed, the District of Nevada concluded that immunity was waived in that case. Subsequently, the U.S. Supreme Court found that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum." Lapides v. Bd. of Regents, 535 U.S. 613, 624 (2002).  The U.S. Supreme Court noted that for the claims in question, "a state statute had waived sovereign immunity from state-law suits in state court." Lapides v. Bd. of Regents, 535 U.S. 613, 616 (2002).

Case law setting out the bounds of the Eleventh Amendment can not be directly applied to tribal sovereign immunity without analysis as "Tribal sovereign immunity...is not precisely the same as either international law sovereign immunity or sovereign immunity among the states." In re Greene, 980 F.2d 590 (9th Cir. 1992), Rymer concurrence.  The sovereign immunity of foreign states is generally governed by the Foreign Sovereign Immunities Act of 1976 (28 U.S.C. §1602 et seq.) which includes a provision stating, "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. §1605(a)(1).  The U.S. Supreme Court terms Native American tribes "domestic dependent nations." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991), citations omitted. The Ninth Circuit has specifically examined whether they are foreign or domestic governments and concluded they are domestic. Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1059 (9th Cir. 2004).  It follows that the Foreign Sovereign Immunities Act of 1976 does not apply to Native American tribes. See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006).

Subsequent to Lapides, an opinion from the Northern District examined the issue with regard to tribal immunity and concluded that removal does not constitute waiver:

> 'Tribes are, foremost, sovereign nations.' American Vantage Companies, Inc v Table Mountain Rancheria, 292 F.3d 1091, 1096 (9th Cir. 2002). Even though Indian tribes are not foreign sovereigns, id., the Supreme Court has nevertheless found that in determining whether an Indian tribe has waived its sovereign immunity, '[i]nstructive here is the law governing waivers of immunity by foreign sovereigns.' Id. at 421 n.3; see also Kiowa

6

Tribe [of Oklahoma v Manufacturing Technologies, Inc, 523 U.S. 751, 759 (1998)] ('[W]e find instructive the problems of sovereign immunity for foreign countries.').

Foreign sovereigns do not waive their sovereign immunity merely by removing to federal court. See Rodriguez v Transnave Inc, 8 F.3d 284, 289 (5th Cir. 1993). Otherwise, a foreign sovereign would be forced to 'choose between asserting removal or the immunity defense, but not both.' Id. Among the reasons cited for this legal principle are the need for a 'uniform body of law in this area' and the distinctly federal nature of foreign policy and relations. Id. Similarly, because 'Congress possesses plenary power over Indian affairs,' South Dakota v Yankton Sioux Tribe, 522 U.S. 329, 343, 118 S. Ct. 789, 139 L. Ed. 2d 773 (1998), 'Indian tribes fall under nearly exclusive federal, rather than state, control.' American Vantage Companies, 292 F.3d at 1096. Tribal sovereignty 'exists only at the sufferance of Congress and is subject to complete defeasance.' United States v. Wheeler, 435 U.S. 313, 323, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978). Given the distinctly federal nature of Indian tribal sovereignty, the court finds the Supreme Court's analogy with foreign sovereigns persuasive in this setting. Forcing Indian tribes sued in state court to choose between removal or waiver of sovereign immunity would interfere with federal plenary power and interests in this arena. See Kiowa Tribe, 523 U.S. at 759 ('Like foreign sovereign immunity, tribal immunity is a matter of federal law.'). Cf. Maynard v. Narragansett Indian Tribe, 984 F.2d 14, 15-16 (1st Cir. 1993) (relying on Indian tribe's sovereign immunity against claims after removal).

Sonoma Falls urges that the court equate sovereign immunity with Eleventh Amendment and apply cases finding waiver of Eleventh Amendment immunity by the mere act of removal. For this proposition, Sonoma Falls relies primarily on Lapides v Board of Regents, 535 U.S. 613, 122 S Ct 1640, 1646, 152 L. Ed. 2d 806 (2002). Eleventh Amendment immunity serves to 'avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties,' Puerto Rico Aqueduct and Sewer Auth v Metcalf & Eddy, Inc, 506 U.S. 139, 146, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993), and is distinct from a state's underlying sovereign immunity from suit. See Ortiz-Feliciano v Toledo-Davila, 175 F.3d 37, 40 n.2 (1st Cir. 1999). The Court in Lapides makes a similar distinction and limits its holding accordingly. See 122 S. Ct. at 1643 ('Nor need we address the scope of waiver [of Eleventh Amendment immunity] by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court.'). Indeed, throughout the opinion, the Court in Lapides is careful to refer to Eleventh Amendment immunity and sovereign immunity as distinct and separate doctrines.

Sonoma Falls Developers, LLC v. Dry Creek Rancheria Band of Pomo Indians, 2002 U.S. Dist. LEXIS 28087, *16-19 (N.D. Cal. 2002).

After Sonoma Falls, the Ninth Circuit expanded on Lapides in a case concerning both federal and state claims by holding, "removal itself affirmatively invokes federal judicial authority and therefore waives Eleventh Amendment immunity from subsequent exercise of that judicial authority....[We] hold to a straightforward, easy-to-administer rule in accord with Lapides: Removal waives Eleventh Amendment immunity." Embury v. King, 361 F.3d 562, 566 (9th Cir. 2004).  Recently, the Ninth Circuit discussed Embury in dicta:

The Director argues that Lapides and Embury should essentially be confined to their

7

facts. Under this reading, the rule applies only where a state has already consented to suit in its own state courts and thus, a state defendant removing a case to federal court takes with it whatever sovereign immunity it had in state court. Other courts have endorsed this narrow view of Lapides's waiver rule. While our Embury holding strongly suggests a broader interpretation of Lapides, our conclusion that the Director consented to suit in state court renders the issue moot for the purpose of this case.

Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 663 n.20 (9th Cir. 2009). This broad interpretation (removal waives sovereign immunity over all claims, not just claims for which state had no sovereign immunity in state court) is shared by other circuits. See Meyers v. Texas, 410 F.3d 236, 250 (5th Cir. 2005); Estes v. Wyo. DOT, 302 F.3d 1200, 1204 (10th Cir. 2002). Embury's expansive language and the recent dicta eliminates the distinction made in Sonoma Falls between Eleventh Amendment immunity as to federal venue and sovereign immunity from suit.

At this point, the case law is not absolutely clear whether tribal sovereign immunity is more like the immunity enjoyed by the states or by foreign sovereigns in the circumstance of removal. There are a number of cases in which courts have applied tribal sovereign immunity after removal without addressing the issue. See New York v. Shinnecock Indian Nation, 280 F. Supp. 2d 1, 8 (E.D.N.Y. 2003); Maynard v. Narrangansett Indian Tribe, 798 F. Supp. 94 (D.R.I. 1992); Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 1997 U.S. Dist. LEXIS 21776 (W.D. Mo. Nov. 19, 1997). In other cases where tribes removed, courts have pierced immunity but not based on waiver from removal. See Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes, 623 F.2d 682 (10th Cir. 1980). These cases, in conjunction with Sonoma Falls, leads to the conclusion that removal to federal court does not waive tribal sovereign immunity. However, the issue is not settled and appeal may be fruitful for Plaintiffs.

**C. Remand**

This case was removed from Superior Court, County of Tuolumne. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c). Sovereign immunity is commonly termed an issue of subject matter jurisdiction, but some courts have found that, "sovereign immunity is a jurisdictional

consideration separate from subject matter jurisdiction." Kreig v. Prairie Island Dakota Sioux, 21 F.3d 302, 305 (8th Cir. 1994).  It is not clear whether the language of Section 1447(c) mandates remand in cases where the "subject matter jurisdiction" lacking is an assertion of sovereign immunity.  Further, the Ninth Circuit has recognized a futility exception when subject matter jurisdiction is lacking, stating, "Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources....District court resolution of the entire case prevents any further waste of valuable judicial time and resources. The district court correctly denied the motion to remand and dismissed the state claims." Bell v. City of Kellogg, 922 F.2d 1418, 1424-25 (9th Cir. 1991); accord Herman v. Salomon Smith Barney, Inc., 266 F. Supp. 2d 1208, 1213 (S.D. Cal. 2003); Dale v. IRS, 2001 U.S. Dist. LEXIS 7013, *7 (E.D. Cal. April 27, 2001).  In this case, the state court would not have jurisdiction over Defendants if the federal court does not.  No party has asked for remand in this case and it appears that remand would be futile.  The case will be dismissed.

### IV. Order

Defendants' motion to dismiss the case for lack of subject matter jurisdiction is GRANTED.  The clerk of the court is directed to close this case.

IT IS SO ORDERED.

Dated:   December 15, 2009                    /s/ Anthony W. Ishii
                                       CHIEF UNITED STATES DISTRICT JUDGE